Please the court. Paul Levy appearing on behalf of Brenda Buell Marsh who is also present here today. This is an appeal to the district court's decision granting motion for summary judgment to the defendants, granting the motion to dismiss to the defendants on their complaint, and also denying plaintiff's motion for summary adjudication. Appellant is the mother of Phillip Buell, who wishes her son to be remembered by photographs such as this one, not the gruesome and terribly upsetting autopsy photographs that Mr. Holter obtained as a deputy district attorney in an improper fashion. Can I just go over one thing? Those photographs were admitted at the trial, correct? Yes, your honor. They were admitted into evidence? That's correct, your honor. And they became part of the public record? They were kept under seal. They could not be released. These public pictures, these records and these pictures at that point in time were not, that doesn't lose their protected status, but they were put into the public domain. But that doesn't stop the fact that they were protected records and they were then kept by, sealed by the court and they could only be released upon a court order to whoever wanted to get that information. So they were still, remained protected records, but yes, that's the fact that they were put into a court record. They were displayed to the jury, right? Yes, they were. And in the courtroom? Yes, they were. And the protections that we have here, but it's not disputed in this matter that Mr. Holter testified that he took the autopsy photos as a memento in 1995, 12 years after he had prosecuted the Ken Marsh case. It's also not, it's not disputed that he took them with him, he continued to keep them during the next six years that he was at the district court. The district attorney's office, that he removed them again as mementos and kept them with him when he left and retired. And then it's not disputed here that the County of San Diego's district attorney's office did not have any policy or procedures which provided any protections at all for the copying or use of death images until 2006 after these events occurred. And what we're talking about here are rights of parents, family members to the death images of their relatives. And these rights were recognized prior to 1968 with the enactments of the Freedom of Information Act, POLA, California Public Record Act, and in California it's also CCP section 129. All three statutes recognize the well-established cultural tradition of a family's control over the body and death images of their deceased relatives. That was set forth by the Supreme Court in National Archives in Fama versus Fama. The Supreme Court in that case was talking about common law rights and cultural traditions. How does this rise to the level of constitutional right? Well, we've got a statute then protecting those constitutional rights. Well, it's part of the family integrity rights. If you look down in the case of Kelsen versus the city of Springfield, this court basically said that it confirmed that a substantive due process right to a family's integrity and family association is well-established. That was also established in Troxel and the like. That's family association. How does that relate to the photographs? The right to a family integrity and association basically is the right of a person to their relatives' photographs and the like. And again, it's much in that nature of some other country dragging the remains of our military to their streets or taking pictures of that nature and displaying them. Our culture has always recognized that we have the right to protect the death images of our relatives. And that has been a long-standing right. National Archives versus Babish recognized that. You say that, but what evidence do you have for that? Well, the evidence I have is, number one, is the Freedom of Information Act that was established in 1968, specifically opening up records to the public, specifically made exclusions under sections 6 and 7 regarding public records of this nature, and specifically said if it invades unwarranted invasion of privacy. They spoke about death images? No, they did not. They talked about the family integrity rights. They talked about death images. Now, if you look at CPRA, which is California's employment… I'm sorry, I think you just contradicted yourself. Pardon me? Actually, do they talk about death images? And you said no. And then you said they talk about death images. They did not specifically identify death images involved. They didn't generally talk about death images at all.  They talked generally about information that involved an unwarranted invasion of privacy. Correct. Right? Then what happens? What is it that shows that the release of death images is an invasion of privacy at all, as opposed to… and then that it's unwarranted invasion of privacy? Let's start with the invasion of privacy. What is it that establishes that? If you were running the DA's office in… I'm sorry, what year was this? The statute was in the 19th. Listen to the question. So, cutting in with an answer. I'm sorry. What was the year that the prosecutor here took the images? 1995, according to you. You listen to the question? Thank you. I apologize. Okay. What was it, if you were running the DA's office in 1994, and you said, gee, we want to know what it is that he thought about death images, what would you have found out there that said release of death images is an invasion of privacy? You would look at it as… Unwarranted invasion of privacy. First, you would look at FOA, CPRA, which were the exceptions in regards to unwarranted invasions of privacy, and at the same time, California enacted CCP section 129, which specifically addressed this issue and said in its legislative history that it was enacted… You don't have to look at the legislative history. It specifically mentions adversities. So, what is it that the statute said? It said the statute specifically addresses this. The statute specifically says that the reprinting or the copying of any… You're talking about CCP 129? Yes, sir. Okay. It states that no copy, reproduction, or facsimile of any kind shall be made of any photograph, etc., of any of the body or any portion of the body of a deceased person taken by or for the coroner at the scene of death or in the course of a postmortem examination or an autopsy made by or caused to be made by the coroner. Then it makes some exceptions, except for use in criminal court actions or proceedings, and then it discusses medical scientific education, forensic pathology, and then also by a law enforcement agency. Now, in this situation, that statute specifically addresses the autopsy photographs that are identified here by Mr. Coulter himself as autopsy and also the legislative history of that statute specifically states that it was protecting individuals' privacy and families against unconscionable invasions of privacy and said the reproduction of those and use of that for unrelated and improper purposes is contrary to such policy. So, in 1968, a statute was enacted essentially going even further than FOIA and CPRA identifying autopsy photographs, and ironically in that statute, it also identifies that if you have a request for these type of records, you are supposed to request it from the district attorney's office. Counsel, what I don't follow is it appears to me that Coulter might very well have violated CCP 129. What about that makes it a constitutional violation that you can recover under section 1983? Well, the first portion of it is if you go back to National Archives v. Babish, which identifies That was the FOIA case. I don't think you could actually see a single case that has actually held that the survivors, family survivors of a deceased person have a constitutional right of privacy over those autopsy photos. I think this would be, if we were to decide that, we would be the first court deciding that. There is no case that I can see that discusses specifically autopsy photographs. That's correct. Or images of the deceased. Or death images of that nature. No, what we're talking about though is the fact that if you look through National Archives and Babish, it discusses that these were well-established traditions and cultural rights that were established prior to 1968. What we're having is FOIA is established, and in doing so, it has exceptions which are protecting those well-established rights that already existed. Now, CPRA does the same thing in California, and then 129 specifically addresses this. This is right after Bobby Kennedy's assassination and those photographs were coming out. They came out, and the legislative history of California and the statute specifically identifies it was for invasion of privacy rights similar in nature to what was being protected in FOIA and CPRA. It says you cannot take them for unrelated and improper purposes. Now, if you stem from that, we've got a state statute which identifies a privacy right which has been acknowledged as being a federal right. It specifically identifies that and links it to autopsy photographs. And then, if you take cases such as the case of Gonzales v. Spencer of this Ninth Circuit, which essentially took a, affirmed a 1983 complaint against alleging a violation of a constitutional right to privacy by an attorney obtaining access to a juvenile court case file, a confidential file, and in violation of California's Welfare and Institution Code, Section 827. This court came in and said that under Gonzales v. Spencer that you could proceed with your lawsuit if it was a motion to dismiss situation. And it identified that a state statute here can create or enforce a state or a federal liberty interest. In this case, however, we've got a combination of FOIA, which is a statute, a federal statute, which protects these invasion of privacy rights. We've got a state statute which goes on and identifies them. Together, read together, it was clear that in 19- FOIA does not apply to this at all, right? FOIA, this is not a Freedom of Information Act request, no, Your Honor, but FOIA- It's not a FOIA record at all. No, it isn't. FOIA deals with federal records. Correct. And CPR- This is, FOIA has nothing to do with that except my analogy giving us some idea of what, what privacy rights must exist, might exist out there. FOIA in National Archives does indicate that this family integrity, the death images and that type of information is protected. It says so in a FOIA context, but it's not just limiting it to just a FOIA context. I even believe the Katsouras case here- You know, I understand that argument, and I understand what you're saying with it, but FOIA does not apply to this case. All it does is provide some idea of what the Supreme Court thought was out there by way of privacy interests. The statute, you're sort of adding on and saying, well, there's the existence of FOIA, FOIA was passed, and that doesn't do anything for you because the statute doesn't apply to you. It's only by reference of that and along with 129- The only thing that helps you about FOIA is in the Supreme Court case, interpreting that statute says something that's relevant. The statute does you no good at all. The statute, no, it doesn't. But the interpretation of the rights that it's protecting is what I'm referring to in the court. I would like to reserve- Why do you even need Section 1983 to vindicate whatever harm she suffered? Why? Because it's a federal- Why can't you vindicate her harm through state causes of action? State causes of action, there's a massive amount of immunities in the state courts and the state legislature in California that the- It worked for many of them, it did, but the fact of the matter is that there are immunities that were granted there, but what we're trying to identify- And there's qualified immunity here as well. We even talked about qualified immunity. The law was clearly established at the time when he took the photographs. And that's why I'm trying to identify to you that in 1968, these rights were- Can you tell us the law was clearly established in 19- whenever he took these photos? Yeah, with 129, it was definitely clearly established that you could not take these photographs at that point in time. In 1968, the statute came out and said you cannot take these photographs and you cannot do so, and it worked. Doing this for an invasion of privacy- Yeah, there were a series, there were a batch of state law claims. Is that correct? The district court dismissed the state law claims. No, she just did not rule on them. She ruled on one of them, but the remaining ones- They were dismissed without prejudice. Yes, they were dismissed without prejudice. They're still available. I may have my reserve for one more. I'll join at the end. Okay. Good morning, Governor McCarthy, on behalf of defendants in Appellate East County of San Diego and Deputy District Attorney Jay Coulter. As the court has indicated, there is no established constitutional right to privacy. It's a death image of a family member. The case that's cited, the FOIA case that keeps coming up here, National Archives- The Supreme Court specifically said the FOIA exemption, the statutory scheme created by Congress, went further than any common law and went further than any constitutional protection. The California Supreme Court, under Katsouras, said exactly the same thing, that there was no established constitutional right to the privacy and the death image, which is specifically the reason they opted for the qualified immunity defense on the Civil Rights Claims, because there was no established law, and Katsouras did not establish such a law. And there is no reason for the court to do so in this case. As I believe Judge Paez indicated, there is adequate protection under state law and a common law of privacy, right to privacy, to ensure that plaintiff, if she is entitled to it, receives any damages that she suffered as a result of Mr. Coulter's conduct. There is no reason for this court, in a broad stroke, to establish a right to privacy, to death image. You say that, but he tells us there are lots of immunities in the state law. As Judge Paez pointed out, that didn't protect the officers in the Katsouras case. They were found individually liable. The CHP got off on sovereign immunity, but not the individual highway patrol officers. And I believe, as Judge Wardlaw said, qualified immunity is a big issue in this case. I think it is clear that there is no established right to privacy and death image, that being the case. What about Section 129? Section 129 is a creature of state law. It offers protections to... All property rights and many liberty rights are creatures of state law. That is correct. Nevertheless, they are protected by penal law, they are taken in proper ways, right? If the state creates a property interest in each property and then it takes it away without paying just compensation, you have a taker's claim, even though the right itself was created by state law. That is correct, Your Honor. However, I think CCP 129 does not create a property interest in the photographs. Why doesn't it create a liberty interest? It doesn't create... Under federal law, I don't believe it creates a liberty interest because this Court has been very circumspect in attributing liberty interest to privacy rights. It has historically been limited to significant decisions about families, whether or not to continue to bear a child, how your children will be treated medically, keeping the family unit integrity intact. I don't think that level of liberty interest exists in this case to any degree whatsoever. CCP 129 also prescribes a process for evaluation of release of the photographs. It doesn't provide a substantive remedy. Even in Katsouras, the only mention of CCP 129, I believe, was in a footnote in a concurring opinion. The Supreme Court in Katsouras based the right to recovery under the common law right to privacy, which is not a creation under federal statute. It exists under state law only. And this Court, whether it be a property interest or a liberty interest enforceable through the 14th Amendment, has again been very careful in creating avenues for recovery under federal law. The property interests have, for a great degree, been limited to prisoner rights issues. This Court has not been one that would go out and expand the concept of the right to privacy. Well, maybe that's because they were a resident prisoner in the last cases. But what is it generically about this? I mean, it's a very specific statute that gives seemingly rights that seem to be applicable here. And you've got to admit, it's a cold-hearted, bastardly fashion in taking those photographs. Well, I have to say I disagree with that because I understand what was going on at the time and why this occurred. Why don't you explain it to me. Okay. What was going on at the time? Mr. Marsh was released because the district attorney did not pursue the habeas proceeding. And why did the district attorney not pursue the habeas proceeding? Because she felt, well, as far as the habeas proceeding, I'm afraid you would have to ask her. She didn't choose to retry the case, which is different because in the habeas proceeding, Mr. Marsh would have had the verdict. The expert said that he didn't know whether it was child abuse or not. He couldn't state that beyond reasonable doubt. What he further said, however, was that the history of injuries to this child were extremely problematic for abuse and it caused him great concern. Her decision was her decision. Honestly, I believe that... Didn't he thereafter get a declaration of factual innocence and was paid some sort of compensation for the time he served in prison? He went forward not with a factual innocence proceeding in superior court where the district attorney would have had an opportunity to oppose the motion. He went instead through an administrative proceeding to the compensation fund in the state of California and in a totally one-sided presentation presented evidence to the administrative hearing officer and that hearing officer, without any rational explanation, decided... You're biased in this proceeding. I'm biased. I can see what you're trying to say, that in fact he was released from prison and had a declaration of factual innocence, right? No, I don't believe that the state... However it came out, it's a finding that he was factually innocent. Strictly under California law, there's a very specific criminal procedure for factual innocence. I understand the difference between a state court and an administrative officer, but he still got that, right? From that administrative officer. Right, okay. But it's, say, five minutes if you just said yes. Right? Good. So that's what you're referring to as what was going on at the time? Yes. In answer to Judge Kosinski's question? Yeah, I'm still completely lost. Okay. What's made... I said what Mr. Corley did was dastardly, and you said we have to disagree, and I've been sitting here listening to you sparring with Judge Wardlaw over something that seems to be both unnecessary and pointless, but has no answer to my question. The answer to your question is that the particular photograph in question, Exhibit 14 in the criminal trial, was being described by the plaintiff and her now husband on radio programs, on TV talk shows, all over the country, Larry King included, the Today Show, as depicting scratches on the back of this young boy's head. And that photograph, that particular photograph, was the piece of evidence that Mr. Coulter and subsequently the jury focused in on to establish non-accidental injury in this case. Because, not scratches, there were three incised wounds parallel up to an inch and a half deep in the back of the skull of this young boy. And there was no explanation under any scenario presented by Mr. Marsh at the criminal trial that would explain how those injuries occurred accidentally. So why did he have to make a copy of the photograph? He took the photograph with him. He left the DA's office. He made a copy of it. When he made the copy of it, he did so to show it to Laura Dolan of the LA Times, who was running an article. So he wanted to defend his position that he took? He wanted to defend the jury's verdict? Is that what it was all about? He wanted to show that there wasn't, the allegations being made at the time, and part of the article in the Times, was that there was some conspiracy between Rady Children's Hospital in San Diego, Dr. David Chapik, and the district attorney's office to falsely prosecute child abuse cases. Did he tell the DA that he was doing this? Jay Coulter? No, he did not. I wish he had. Judge Kaczynski said, why wasn't that a dastardly deed? Well, I can only tell you that I know Mr. Coulter, and I know what he was trying to do at the time. Well, we know what he was trying to do. He was trying to vindicate his prosecution. And to say that Marsh is guilty. But did he have a right to do that, given that the state law says that, under Section 129, he wasn't supposed to copy those photos, and he wasn't supposed to give them to reporters, right? So what gave him the right to go, to start distributing copies of death photos of Marsh's child? I understand, Your Honor. If Mr. Marsh, I'm sorry, Mr. Coulter, had consulted me, obviously I would have told him not to do that. Because he had no right to do it. And then the question becomes, which is why we have this case, did his doing so violate a right of Mrs. Marsh under the constitutional right to privacy? I do not think so, Your Honor. Certainly not under any established law at this time. Well, okay, there's a difference between whether we were to decide that there is a constitutional right to privacy that includes an interest in the death photos of one's child. We could decide that. There's a difference between that and whether your client would be held liable, because if we were to decide that, maybe the first time a court is ever decided that. And so certainly it wouldn't have been well established as of 1995, when he took the photos, or 2006, when he gave them to reporters unlawfully. I would say as far as the 1995, I don't think there was anything unlawful about Mr. Coulter's having the photos. That was the first hapeist petition that Mr. Marsh submitted to get released from prison. And the DA's office was responding to that petition. And as the prosecutor involved... Did it file a substantive response? The district attorney's office? Yes. Yes, it did. And the hapeist was done. And did they attach the photos in that response? I don't believe so. So I don't think there was any improper copying. He must have made a copy before. He made his... Before the hapeis proceedings began. Right before, yes. He's keeping it as a memento. They are using that terminology. He testified to that. That was in his deposition. I understand, Your Honor. He also provided training. When Mr. Marsh was convicted in 1983, there was no separate child abuse homicide unit in most police departments. As the years went by, it became apparent that that was necessary and those units were established. And commensurate with that was the need to train professionals in recognizing child abuse. Mr. Coulter trained and used certain photographs from certain cases to show evidence of abuse and how you would investigate. In his deposition, he didn't at all mention any specific programs that he participated in where he used Exhibit 14. He did not identify a specific training program. He mentioned that he did train. And following on an earlier question Your Honor had asked, this particular photograph in question was part of the original court record, but it's also been used in both the Ken Marsh case and in the Brandon Marsh case as exhibits to depositions and was not placed under seal in any of those depositions. It's attached as an exhibit to several. I'm sorry, when you say the Ken Marsh and Brandon Marsh case, this is referring to this case? No, I'm sorry, Your Honor. There was another case Mr. Ken Marsh filed for a whole host of... For one of the prosecutions, right? Basically, yes. And that matter has been resolved by this court. This is a second action stemming from information gained in that first case. It was in that case that Mrs. Marsh learned that Culpert had made a copy of the photograph. That is correct, Your Honor. There seems to be some discrepancy, not that it's really that important to our decision, but did he copy one photograph or did he have all 16 photographs? Or what is particularly at issue here? There's one photograph in the record here. He had, when he left the district attorney's office, he had the one photograph. The full set of the 16 were provided to him by my office in preparation for his deposition in the Ken Marsh case so that he could adequately respond to questions. So that's where the other photos are. He did not leave the 16 photos. He left that one photo. I think that's it unless the court has any further questions. Thank you. Very briefly, Your Honor, in regards to the issues on the dialogue on Ken Marsh and PC-4803 and the scratches and the number of photos, I refer the court to our reply to address those issues and what we believe to be the true facts as opposed to what counsel's argued. What about the fact that this was, the photograph was disclosed in the deposition? They were put under seal and there were protective orders in those proceedings, Your Honor. The opposing counsel just told us that was not the case. My understanding is they were put under seal and protective orders were put in all situations. This is in the Ken Marsh case? In the Ken Marsh case, yes. Now, not in the criminal case, obviously, because they were evidence. But, and I refer the court to the record that we have here and what we have on the doctors. In fact, I think the photos were under seal in this case as well. What I, since I have very limited time, essentially, in regards to this, why, you ask, are we filing this case and going on a federal situation? In addition to going after Mr. Coulter for violating constitutional rights, we're also going, we're asking that the court rule in regards to the county of San Diego. They failed to take any action whatsoever, even though we have an evasion of privacy right set forth in 129 and recognized, although it's not taught, but recognized in FOIA and CPRA. They took no action whatsoever in regards to this case and in this statute to protect these constitutionally protected rights against unwarranted and unconscionable evasions of privacy. We ask in the court, just like it did in Gonzales v. Spencer, we've got a state statute here protecting rights of individuals regarding juvenile court case files, which this court affirmed. We ask that you do the same here and allow us to proceed. Thank you very much. If I heard correctly, I heard counseling diametrically opposing factual statements. One said it was not on the seal. The other one said it was. One of you, so whichever one of you turns out to have erred, I want the statement for the next 48 hours to the court saying, I made a mistake. It was you. You sent us a letter. It was you. You sent us a letter. In regards to the sealing of the Ken Marsh case, Your Honor? Yes. Okay, I will... Obviously, I'm assuming everybody's being honest. I have no doubt about that. My understanding was... Sometimes people make mistakes. And most statements can't be true. So we'll turn it back to the state. Thank you. Okay. I'm sorry for this incident.
judges: Kozinski, Wardlaw, Paez